**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| KENNETH R. EDWARDS, individually and on behalf of others similarly situated,     )<br>)<br>)<br>Plaintiff                                                              )<br>)<br>                                                                                )  **CLASS ACTION COMPLAINT**<br>)<br>vs.                                                                             )  CASE NO. 2:17-CV-478<br>)<br>MENARD, INC.,                                                                   )<br>)<br>Defendant                                                             ) | |

***PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF AND REQUEST FOR TRIAL BY JURY***

*I.  STATEMENT OF THE CASE*

Plaintiff Kenneth R. Edwards ("Edwards") brings this Rule 23 class action complaint against Defendant Menard, Inc. ("Menard, Inc.") under the Indiana Wage Payment Statute. Edwards' complaint addresses a class-wide violation of the Indiana Wage Payment Statute that Menard, Inc. is committing against all of its Indiana-based employees.[1]  This class action claim protects all Indiana-based employees of Menard, Inc., including those who work or worked for Menard, Inc. at one of its Indiana retail locations, who work or worked for Menard, Inc. at its Terre Haute, Indiana Midwest Manufacturing facility, and/or who work or worked for Menard, Inc. at its Indiana distribution facility.  Edwards will serve as class representative of current and former Indiana-based employees of Menard, Inc. who were victims of Menard, Inc.'s class-wide wage violations.  Specifically, Menard, Inc. is and has been taking illegal wage deductions from

---

[1] Menard, Inc. employs workers in many other states throughout the United States (particularly the Midwest), but Plaintiff limits the scope of this class action to wage and hour violations committed against Menard, Inc. employees who have worked for the company in Indiana.

1

its employees' pay checks in such a manner that every deduction violates the mandatory requirements of the Indiana Wage Assignment Statute. See I.C. 22-2-6-2. These deductions which violate the Indiana Wage Assignment Statute, I.C. 22-2-6-2, result every time in the underpayment of wages, creating violations of the Indiana Wage Payment Statute, I.C. 22-2-5.

Edwards' class action claim based upon Menard, Inc.'s illegal wage deductions is perfect for class treatment and will be easy to prove. All of Menrard, Inc.'s wage violations will be shown on the face of its pay stubs to employees, which show every illegal wage deduction taken from every Indiana-based employee.

This class action claim is brought in this U.S. District Court pursuant to the Class Action Fairness Act, see 28 USC § 1332(d). Edwards' class action claims involve $5,000,000.00 or more in damages. Additionally, Edwards (and, likely, most to all of the putative class members) are residents of the State of Indiana, while Menard, Inc. Is a Wisconsin-based entity.

## II. FACTUAL ALLEGATIONS

1. Edwards is a resident of the State of Indiana, and is domiciled in Terre Haute, Vigo County, Indiana. Edwards is a former employee of Menard, Inc., working for Menard, Inc.'s Midwest Manufacturing division. Edwards worked as an hourly paid team member from approximately February 2015 until he voluntarily resigned his position of employment in June 2017.

2. Menard, Inc. is a foreign corporation with its primary headquarters in Eau Claire, Wisconsin. Menard, Inc. employed Edwards at its Midwest Manufacturing division location in Terre Haute, Indiana. Based upon information and belief, Menard, Inc. employs or employed workers in at least 35 retail locations in the State of Indiana, at its Midwest Manufacturing

facility in Terre Haute, Indiana and at its distribution facility in the State of Indiana.

3. Based upon information and belief, Edwards estimates that Menard, Inc. has employed at least 5,000 workers in the State of Indiana over the last two years' time and likely employed far more than 5,000 different individuals during that period of time (particularly with employee turnover).

4. Menard, Inc. subjected Edwards and all of its Indiana-based employees to illegal wage deductions that violated the mandatory requirements of the Indiana Wage Assignment Statute. See I.C. 22-2-6-2.

5. Edwards is specifically alleging that Menard, Inc. has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Menard, Inc. has failed and refused to pay Edwards and each and every other similarly situated Indiana-based employee his/her wages in full in each and every week Menard, Inc. took any wage deduction from an employee.

6. Every Indiana-based Menard, Inc. employee was harmed in the exact same way, regardless of whether the employee worked for Menard, Inc. at a retail location, at the Midwest Manufacturing facility or at the distribution center.

7. Menard, Inc. has and had no legal authority to take any of the wage deductions at issue in this class action lawsuit, because Menard, Inc. did not have valid, signed written wage assignments from any Indiana-based employee which complied with all of the mandatory requirements of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, which is necessary to allow Menard, Inc. to legally take certain types of deductions from its employees' wages.

8. For purposes of this class action lawsuit, Edwards is similarly (and identically)

situated to all Indiana-based Menard, Inc. employees who were subjected to one or more unlawful wage deductions taken by Menard, Inc. pursuant to its company-wide written policy and form it called "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment."  All Indiana-based Menard, Inc. employees, including all retail employees, all Midwest Manufacturing employees and all distribution center employees were required to sign these two policies - "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment" - and all Indiana-based Menard, Inc. employees, including every retail employee, every Midwest Manufacturing employee and every distribution center employee, were subject to the written terms of these policies and forms (or very similarly worded policies and forms).

9. On the portion of the form Menard, Inc. titled the "Menard, Inc. Payroll Deduction Authorization," the following language appeared:

> "**MENARD, INC. PAYROLL DEDUCTION AUTHORIZATION**
> I, the undersigned Team Member, having received a copy of the "Grow with Menards Team Member Information Booklet," and read the rules involving Payroll Deductions and discounts, agree to abide by those rules and to comply with all the Payroll Deduction procedures.  I understand the Payroll Deduction Benefit is a privilege and in consideration for Menard, Inc. allowing me to purchase items at the 10% discount and allowing me to have the purchase deducted from my check, I authorize Menard, Inc. To deduct the invoice balance from my payroll check and specifically authorize that upon my termination of employment with Menard, Inc. that any unpaid balances for Payroll Deduction purchases will be given priority from any earnings accrued upon termination and that if a balance still remains, I will promptly pay Menard, Inc. the remaining balance upon demand.
>
> Team Member's Signature _____   Date _____
>
> Witness Signature _____   Date _____  "

Every Indiana-based Menard, Inc. employee was required, as a condition of employment, to sign this same or similarly-worded form.

10. On the portion of the form Menard, Inc. titled the "Menard, Inc. Equipment and Tool Use Policy Acknowledgment," the following language appeared:

> "**MENARD, INC. EQUIPMENT AND TOOL USE POLICY ACKNOWLEDGMENT**
> Equipment and Tools shall include, but not be limited to company owned: vehicles, radios, computers, phones, fixtures, etc.
> A. Menard, Inc. equipment and tools can only be used by the undersigned or another Team Member of Menard, Inc. who has signed an Equipment and Tool Use Policy Acknowledgment.
> B. The undersigned Team Member understands and agrees that any damage to Menard, Inc.'s equipment and/or tools, either by accident or misuse, may result in disciplinary action against the undersigned Team Member up to and including termination.
> C. The undersigned Team Member understands and agrees that the cost of repair/damages to any equipment and/or tools caused by the undersigned Team Member may be assessed against him/her in an amount not to exceed $200 per occurrence, payable to Menard, Inc.
> D. The above terms remain in effect until the termination of undersigned's employment with Menard, Inc.
>
> Team Member's Signature _____   Date _____
>
> Witness Signature _____   Date _____ "

Every Indiana-based Menard, Inc. employee was required, as a condition of employment, to sign this same or similarly-worded form.

11. Additionally, Menard, Inc. required every Indiana-based employee, as a condition of employment, to sign a form titled "Team Member Garment/Tool Purchase Agreement." This form is too lengthy to quote, but it included the following relevant language:

> "HR Instructions: New Team Members are required to purchase Garments and Tools needed for their position if they do not already have them.;"
>
> "I authorize Menard, Inc. to deduct this amount from my next payroll check. I agree to pay any balance remaining should my employment end prior to it being paid.;" and
>
> "Team Member's Signature _____   Date _____ "

5

The "Team Member Garment/Tool Purchase Agreement" required Indiana-based employees to purchase items and tools Menard, Inc. needed and required the employees to use for work performed for Menard, Inc., including, but not limited to, the following: 1) Menard, Inc. clothing items such as vests, aprons, gloves and shirts; and 2) tools such as hammers, box cutters, utility knives, tin snips, tape measures, carpet knives and utility pouches.

12. At all times relevant to this lawsuit the form containing the "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment" and the form titled "Team Member Garment/Tool Purchase Agreement" did not contain or include any language that told the Indiana-based Menard, Inc. employee required to sign the forms that 1) the agreement, form or "wage assignment" was "by its terms revocable at any time by the employee upon written notice to the employer," and 2) was "agreed to in writing by the employer."  See I.C. 22-2-6-2(a)(1)(C) & (D).

13. Every wage deduction Menard, Inc. took from Edwards and all of his similarly situated Indiana-based coworkers pursuant to the policies noted of the Menard, Inc. forms the containing the "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment" and the form titled "Team Member Garment/Tool Purchase Agreement" was illegal and in violation of the Indiana Wage Payment Statute and the Indiana Wage Assignment Statute for at least the two following reasons:

    a. the agreement, form or "wage assignment" did not contain the required language that told the employee who signed the agreement that the wage assignment was "by its terms revocable at any time by the employee upon written notice to the employer;" and

      b.      the agreement, form or "wage assignment" did not contain any language or notation at all that indicated that the wage assignment was "agreed to in writing by the employer."

See I.C. 22-2-6-2(a)(1)(C) & (D).  This means that every wage deduction taken by Menard, Inc. from every Indiana-based employee was unlawful and a violation of the Indiana Wage Payment Statute.  This is true of wage deductions which would arguably be permitted by the Indiana Wage Assignment Statute if Menard, Inc. had proper wage assignments required by the law, such as deductions for uniforms and equipment "necessary to fulfill the duties of employment" and purchase of items or goods from Menard, Inc. for the employees' own benefit.  This is also true of wage deductions taken by Menard, Inc. which would always be illegal, even if Menard, Inc. had employees sign wage assignments meeting all of the requirements of I.C. 22-2-6-2(a)(1), such as deductions to cover the costs of repairs or damages Menard, Inc. assessed to an Indiana-based employee.  See also I.C. 22-2-8-1, which makes wage deductions taken to fine an employee a Class C infraction.  Other deductions which would always be illegal include 1) deductions taken for the cost of uniforms and equipment which were <u>not</u> necessary to fulfill the duties of employment and 2) deductions taken for the cost of uniforms and equipment which, at any time, exceeded the lesser of a) two thousand five hundred dollars ($2,500) per year; or b) five percent (5%) of an employee's weekly disposable earnings [as defined in I.C. 24-4.5-5-105(1)(a)].

      14.      Edwards was an actual victim of Menard's unlawful wage deductions during his employment with Menard, Inc.  Edwards had sums deducted from his wages pursuant to the terms of a "Menard, Inc. Payroll Deduction Authorization" form he was required to sign.

Deductions were taken from Edwards' wages to cover costs of tools Menard, Inc. required Edwards to purchase over his years of employment to perform his work for Menard, Inc., including multiple tape measures, hammers, T-squares, chalk, and knives.

15. Menard, Inc. intentionally and knowingly violated its employees' rights to earned wages through Menard, Inc.'s illegal wage assignment and wage deduction practices.

16. Edwards and all similarly situated, Indiana-based Menard, Inc. coworkers have been harmed by Menard, Inc.'s published and systematic policies and practices of taking illegal wage deductions, all of which profited Menard, Inc. and worked to the detriment and harm of Menard, Inc.'s Indiana-based employees. These illegal wage deductions are clearly the product of a conscious policy decision made by Menard, Inc. to pay its Indiana-based employees less than their full, earned wages.

17. Menard, Inc.'s class-wide, illegal wage deductions constitute intentional, deliberate and bad faith violations of the Indiana Wage Payment Statute.

18. In Edwards' case, as has been true in the cases of many current and former Indiana-based Menard, Inc. employees, Menard, Inc. has failed and refused to make a payment of all accrued wages on the date those wages became due, all in violation of the Indiana Wage Payment Statute.

19. Important to his class action complaint, the Indiana Wage Payment Statute provides specific protections to wage earners which may not be waived or contracted away.

20. As described above, Edwards believes and asserts that more than 5,000 putative class members have been similarly subjected by Menard, Inc. to unlawful wage deductions and have claims under the Indiana Wage Payment Statute, but certainly the class consists of well

over 100 members. Edwards asserts that there is certainly more than Five Million Dollars ($5,000,000.00) in controversy in this action, particularly as the aggregate unpaid wages owed to the class based upon cumulative illegal wage deductions plus the liquidated damages under the Indiana Wage Payment Statute which are equal to an additional two times the aggregate, class-wide wage deductions total well in excess of Five Million Dollars ($5,000,000.00). Finally, Edwards is a citizen of the State of Indiana. Menard, Inc. is a citizen of the State of Wisconsin. Diversity jurisdiction exists for purposes of this Court's jurisdiction under the Class Action Fairness Act. 28 USC § 1332(d).

21. By way of this Complaint, Edwards seeks for himself and for all other similarly situated Indiana-based Menard, Inc. employees and former employees all unpaid wages (illegally deducted wages), and any and all liquidated damages owed to each. Additionally, Edwards seeks payment of his reasonable attorney's fees, costs and expenses.

### III. CLASS ACTION ALLEGATIONS

22. Edwards incorporates herein by reference paragraphs 1 - 21 above.

23. This Complaint is brought as a class action on behalf of other current and former Menard, Inc. Indiana-based employees who were similarly denied payment of wages under Menard, Inc.'s compensation scheme that involved unlawful wage deductions.

24. With respect to Rule 23(b)(3) class action claims, Edwards will serve as class representative over the following class:

> Edwards will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute. This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Edwards and on behalf of all eligible Menard, Inc. current and former Indiana-based employees who were damaged by Menard, Inc.'s compensation system which required and resulted in illegal wage deductions. By virtue of the class action, Edwards represents the identical and/or similar

interests of former and current Indiana-based coworkers who were denied wages under the same circumstance.

25.     The number of Menard, Inc.'s current and former Indiana-based employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Edwards will pursue discovery to obtain the names of the other current and former Menard, Inc. Indiana-based employees, to provide notice of the class action and to offer the opt out opportunity.

26.     Particularly with the type of wage claim and practice at issue in this case, there are questions of law and fact that are common to the entire class.

27.     Edwards' claims are typical of the claims of the whole group of current and former Indiana-based employees harmed by Menard, Inc.'s illegal wage deductions.  Edwards' claims are typical of the claims of the whole class of current and former Menard, Inc. Indiana-based employees harmed by Menard, Inc.'s illegal wage practices.

28.     Edwards will act to fairly and adequately protect the interests of the entire class of current and former Menard, Inc. Indiana-based employees.

29.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Menard, Inc.  For example, to prove Menard, Inc.'s illegal wage practices, Edwards and other members of this class would seek in discovery records about all similarly situated current and former Menard, Inc. Indiana-based employees who were similarly subjected to illegal wage deductions.  Individual lawsuits by the members of the class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

30. A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of Indiana statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

31. A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## IV.  JURISDICTION AND VENUE

32. This Court has jurisdiction over this class action brought under the Indiana Wage Payment Statute by virtue of the Class Action Fairness Act.  28 USC § 1332(d).  The class consists of far more than 100 class members.  There is greater than $5,000,000.00 in controversy.  Diversity jurisdiction exists because Edwards is a citizen of the State of Indiana and Menard, Inc. is a citizen of the State of Wisconsin.

33. This Court is the appropriate venue for this cause of action as Edwards and all of the class members worked for Menard, Inc. in the State of Indiana.  More importantly, Edwards and many of the class members worked for Menard, Inc. within counties in the Terre Haute Division of the U.S. District Court for the Southern District of Indiana.

## V.  INDIANA WAGE PAYMENT STATUTE CLAIM

34. Edwards incorporates herein by reference paragraphs 1 through 33 above.

35.     Edwards is the named Plaintiff whose Indiana statutory wage claim arises under the Indiana Wage Payment Statute, I.C. 22-2-5, and the Plaintiff who represents the same or similar interests of all current and former Menard, Inc. Indiana-based employees who voluntarily resigned from employment.

36.     By way of this Claim, Edwards is seeking, individually and on behalf of members of the Plaintiff Class of current and former Indiana-based Menard, Inc. employees, all available damages, including all unpaid wages, all illegally deducted wages, all available liquidated (an amount equal to two times the illegally deducted wages) damages, all attorney's fees, costs and expenses, plus any other damage to which Edwards and his fellow Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Edwards is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, illegally deducted wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.

37.     Menard, Inc.'s failure to pay Edwards and all of his fellow class members their wages in full, particularly the wages it unlawfully deducted from pay checks, constitutes bad faith action.  Menard, Inc. can certainly not claim that it was acting in good faith when it intentionally instituted a scheme of illegal wage deductions which plainly violate the Indiana Wage Assignment Statute.  I.C. 22-2-6-2.

### *VI.  PRAYER FOR RELIEF*

WHEREFORE, Edwards respectfully requests that the Court enter judgment against Menard, Inc. and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, payment of his attorney's fees, costs and expenses;

2. All unpaid and illegally deducted wages;

3. All reasonable attorney's fees and expenses;

4. Costs;

5. An injunction effective to prevent Menard, Inc. from continuing its unlawful wage practices which violate the Indiana Wage Payment Statute, including all policies/practices whereby Menard, Inc. takes illegal wage deductions and all policies/practices which result in Menard, Inc.'s failure to pay to its employees earned wages in full and on time;

6. Prejudgment interest, if available; and

7. Any and all other relief just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net

BARON & BUDD, P.C.

Allen R. Vaught

TX Bar No. 24004966
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
avaught@baronbudd.com

THE LAW OFFICE OF ROBERT J. HUNT, LLC

Robert J. Hunt
Attorney No. 30686-49
3091 E. 98th St. Ste. 280
Indianapolis, IN 46280
(317) 706-1100
Facsimile: (317) 623-8503
rob@indianawagelaw.com


NILGES DRAHER LLC

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
Michaela M. Calhoun (0093546)
7266 Portage St., N.W.
Suite D
Massillon, Ohio 44646
Telephone:    330-470-4428
Fax:          330-754-1430
Email:        hans@ohlaborlaw.com
              sdraher@ohlaborlaw.com
              mcalhoun@ohlaborlaw.com


### *REQUEST FOR TRIAL BY JURY*

Comes now the plaintiff, Kenneth R. Edwards, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

14

        By /s/Robert P. Kondras, Jr.
           Robert P. Kondras, Jr.
           Attorney No. 18038-84
           100 Cherry Street
           Terre Haute, IN 47807
           (812) 232-9691
           Facsimile: (812) 234-2881
           kondras@huntlawfirm.net