**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| KENNETH R. EDWARDS, individually and on behalf of others similarly situated, | ) <br> ) **CLASS ACTION COMPLAINT** <br> ) |
| Plaintiff | ) **COLLECTIVE ACTION PURSUANT TO** <br> ) **29 USC § 216(b)** |
| vs. | ) <br> ) CASE NO. 2:17-cv-00478-JMS-MJD |
| MENARD, INC., | ) <br> ) |
| Defendant | ) |

*PLAINTIFF'S FIRST AMENDED[1] CLASS ACTION AND FLSA COLLECTIVE ACTION
COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF AND REQUEST FOR
TRIAL BY JURY*

*I.  STATEMENT OF THE CASE*

Plaintiff Kenneth R. Edwards ("Edwards") brings this Rule 23 class action complaint

against Defendant Menard, Inc. ("Menard, Inc.") under the Indiana Wage Payment Statute.

Edwards' complaint addresses a class-wide violation of the Indiana Wage Payment Statute that

Menard, Inc. is committing against all of its Indiana-based employees.  This class action claim

protects all Indiana-based employees of Menard, Inc., including those who work or worked for

Menard, Inc. at one of its Indiana retail locations, who work or worked for Menard, Inc. at its

Terre Haute, Indiana Midwest Manufacturing facility, and/or who work or worked for Menard,

Inc. at its Indiana distribution facility.  Edwards will serve as class representative of current and

former Indiana-based employees of Menard, Inc. who were victims of Menard, Inc.'s class-wide

---

[1] Plaintiff amends his original October 16, 2017 Complaint as a matter of course pursuant to
FRCP 15(a)(1).  Service of the original complaint was not achieved until October 19, 2017 (Docket Entry
13) and no responsive pleading has been filed by Defendant.

1

wage violations.  Specifically, Menard, Inc. is and has been taking illegal wage deductions from

its employees' pay checks in such a manner that every deduction violates the mandatory

requirements of the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.  These deductions

which violate the Indiana Wage Assignment Statute, I.C. 22-2-6-2, result every time in the

underpayment of wages, creating violations of the Indiana Wage Payment Statute, I.C. 22-2-5.

     Similarly, Edwards will serve as the representative of all opt-in plaintiffs who worked for

Menard, Inc. at any location in any U.S. State in a collective action under the Fair Labor

Standards Act ("FLSA").  Many of the wage deductions taken by Menard from wages earned by

Edwards and all Menard, Inc. employees constituted unlawful "kickbacks" in violation of the

FLSA.  Specifically, wage deductions for items which benefit the employer or primarily benefit

the employer, such as uniforms, tools required by the employer for work, or other facilities,

constitute illegal kickbacks and violate the FLSA's "free and clear, no kickback" rule when those

deductions cut into an employee's receipt of a minimum wage or overtime wages.  29 CFR §

531.35.  While it is unclear how frequently these kickbacks caused Edwards and his similarly

situated coworkers to suffer a minimum wage violation, there is no question that Mendard's

unlawful kickback deductions caused Edwards and his similarly situated coworkers to suffer loss

of earned overtime wages.  This is a nationwide FLSA collective action and will apply to all

Menard, Inc. employees subjected to an unlawful kickback.

     Edwards' class action and FLSA collective action claims based upon Menard, Inc.'s

illegal wage deductions is perfect for class treatment and will be easy to prove.  All of Menrard,

Inc.'s wage violations will be shown on the face of its pay stubs to employees, which show every

illegal wage deduction taken from every Indiana-based employee and every unlawful (FLSA)

kickback taken from every Menard, Inc. employee.

The FLSA collective action claims and the Rule 23 Indiana Wage Payment Statute class action claims are based upon common facts and common theories. Additionally, the class action claim is brought in this U.S. District Court pursuant to the Class Action Fairness Act, see 28 USC § 1332(d). Edwards' class action claims involve $5,000,000.00 or more in damages. Additionally, Edwards (and, likely, most to all of the putative class members) are residents of the State of Indiana, while Menard, Inc. Is a Wisconsin-based entity.

## II.  FACTUAL ALLEGATIONS

1.      Edwards is a resident of the State of Indiana, and is domiciled in Terre Haute, Vigo County, Indiana. Edwards is a former employee of Menard, Inc., working for Menard, Inc.'s Midwest Manufacturing division. Edwards worked as an hourly paid team member from approximately February 2015 until he voluntarily resigned his position of employment in June 2017.

2.      Menard, Inc. is a foreign corporation with its primary headquarters in Eau Claire, Wisconsin. Menard, Inc. employed Edwards at its Midwest Manufacturing division location in Terre Haute, Indiana. Based upon information and belief, Menard, Inc. employs or employed workers in at least 35 retail locations in the State of Indiana, at its Midwest Manufacturing facility in Terre Haute, Indiana and at its distribution facility in the State of Indiana.

3.      Based upon information and belief, Edwards estimates that Menard, Inc. has employed at least 5,000 workers in the State of Indiana over the last two years' time and likely employed far more than 5,000 different individuals during that period of time (particularly with employee turnover).

3

4.      Menard, Inc. subjected Edwards and all of its Indiana-based employees to illegal wage deductions that violated the mandatory requirements of the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.

5.      Edwards is specifically alleging that Menard, Inc. has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Menard, Inc. has failed and refused to pay Edwards and each and every other similarly situated Indiana-based employee his/her wages in full in each and every week Menard, Inc. took any wage deduction from an employee.

6.      Every Indiana-based Menard, Inc. employee was harmed in the exact same way, regardless of whether the employee worked for Menard, Inc. at a retail location, at the Midwest Manufacturing facility or at the distribution center.

7.      Menard, Inc. has and had no legal authority to take any of the wage deductions at issue in this class action lawsuit, because Menard, Inc. did not have valid, signed written wage assignments from any Indiana-based employee which complied with all of the mandatory requirements of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, which is necessary to allow Menard, Inc. to legally take certain types of deductions from its employees' wages.

8.      Menard, Inc. employs workers at its more than 300 retail locations, at its 10 Midwest Manufacturing locations and its 10 or more distribution centers through many states across the country, including Indiana, Illinois, Ohio, Wisconsin, Michigan, Kentucky, Minnesota, North Dakota, South Dakota, Iowa, Missouri, Kansas, Nebraska and Wyoming.  Based upon information and belief, at any given time, Menard, Inc. employs 40,000 or more non-exempt, hourly-paid employees.

4

9.      Menard, Inc. subjected Edwards and all of its employees to illegal wage deductions that constituted unlawful kickbacks and violated the "free and clear, no kickback" rule under the FLSA.  See 29 CFR § 531.35.  These wage deductions which violated the free and clear, no kickback rule under the FLSA included, but were not limited to, deductions to cover costs of uniforms and clothing which Menard, Inc. required its employees to wear at work and which benefitted only Mendard, Inc. (e.g., Menard vests, shirts with the company logo, aprons, gloves and pouches).  Other unlawful kickbacks included wage deductions to cover the costs of tools, materials and facilities that Menard, Inc. required its employees to purchase and use for work, such as box cutters, chalk, measuring tapes, tin snips, and knives, all of which were required by Menard, Inc. and were used for the benefit of Menard, Inc., not the employees. Menard, Inc. actually took repeated wage deductions from Edwards and all similarly situated workers throughout employment that constituted the kickbacks described and cut into earned overtime wages owed to Edwards and all similarly situated employees.

10.      Edwards is specifically alleging that Menard, Inc. has taken illegal wage deductions in violation of the FLSA, see 29 CFR § 531.35, and in so doing, Menard, Inc. has committed overtime wage violations against Edwards and each and every other similarly situated Menard, Inc. employee every time such a kickback deduction was taken in a week an employee earned and was owed overtime compensation.

11.      Every Indiana-based Menard, Inc. employee was harmed in the exact same way, regardless of whether the employee worked for Menard, Inc. at a retail location, at the Midwest Manufacturing facility or at the distribution center.

12.      Menard, Inc. has and had no legal authority to take any of the unlawful kickbacks/

wage deductions at issue in this FLSA collective action, particularly as employees cannot waive their right to be protected by the FLSA.

13.     For purposes of this class action and FLSA collective action lawsuit, Edwards is similarly (and identically) situated to all Menard, Inc. employees who were subjected to one or more unlawful wage deductions taken by Menard, Inc. pursuant to its company-wide written policy and form it called "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment."  All Menard, Inc. employees, including all retail employees, all Midwest Manufacturing employees and all distribution center employees were required to sign these two policies - "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment" - and all Menard, Inc. employees, including every retail employee, every Midwest Manufacturing employee and every distribution center employee, were subject to the written terms of these policies and forms (or very similarly worded policies and forms).

14.     On the portion of the form Menard, Inc. titled the "Menard, Inc. Payroll Deduction Authorization," the following language appeared:

> **"MENARD, INC. PAYROLL DEDUCTION AUTHORIZATION**
> I, the undersigned Team Member, having received a copy of the "Grow with Menards Team Member Information Booklet," and read the rules involving Payroll Deductions and discounts, agree to abide by those rules and to comply with all the Payroll Deduction procedures.  I understand the Payroll Deduction Benefit is a privilege and in consideration for Menard, Inc. allowing me to purchase items at the 10% discount and allowing me to have the purchase deducted from my check, I authorize Menard, Inc. To deduct the invoice balance from my payroll check and specifically authorize that upon my termination of employment with Menard, Inc. that any unpaid balances for Payroll Deduction purchases will be given priority from any earnings accrued upon termination and that if a balance still remains, I will promptly pay Menard, Inc. the remaining balance upon demand.
>
> Team Member's Signature _____        Date _____

6

Witness Signature _____   Date _____ "

Every Menard, Inc. employee was required, as a condition of employment, to sign this same or

similarly-worded form.

     15.     On the portion of the form Menard, Inc. titled the "Menard, Inc. Equipment and

Tool Use Policy Acknowledgment," the following language appeared:

> **"MENARD, INC. EQUIPMENT AND TOOL USE POLICY ACKNOWLEDGMENT**
> Equipment and Tools shall include, but not be limited to company owned: vehicles, radios, computers, phones, fixtures, etc.
>
> A.    Menard, Inc. equipment and tools can only be used by the undersigned or another Team Member of Menard, Inc. who has signed an Equipment and Tool Use Policy Acknowledgment.
>
> B.    The undersigned Team Member understands and agrees that any damage to Menard, Inc.'s equipment and/or tools, either by accident or misuse, may result in disciplinary action against the undersigned Team Member up to and including termination.
>
> C.    The undersigned Team Member understands and agrees that the cost of repair/damages to any equipment and/or tools caused by the undersigned Team Member may be assessed against him/her in an amount not to exceed $200 per occurrence, payable to Menard, Inc.
>
> D.    The above terms remain in effect until the termination of undersigned's employment with Menard, Inc.

Team Member's Signature _____   Date _____

Witness Signature _____   Date _____ "

Every Menard, Inc. employee was required, as a condition of employment, to sign this same or

similarly-worded form.

     16.     Additionally, Menard, Inc. required every employee, as a condition of

employment, to sign a form titled "Team Member Garment/Tool Purchase Agreement." This

form is too lengthy to quote, but it included the following relevant language:

> "HR Instructions: New Team Members are required to purchase Garments and Tools needed for their position if they do not already have them.;"

"I authorize Menard, Inc. to deduct this amount from my next payroll check.  I agree to
pay any balance remaining should my employment end prior to it being paid.;" and

"Team Member's Signature _____ Date _____"

The "Team Member Garment/Tool Purchase Agreement" required employees to purchase items

and tools Menard, Inc. needed and required the employees to use for work performed for

Menard, Inc., including, but not limited to, the following: 1) Menard, Inc. clothing items such as

vests, aprons, gloves and shirts; and 2) tools such as hammers, box cutters, utility knives, tin

snips, tape measures, carpet knives and utility pouches.

17.    At all times relevant to this lawsuit the form containing the "Menard, Inc. Payroll

Deduction Authorization" and "Menard, Inc. Equipment and Tool Use Policy Acknowledgment"

and the form titled "Team Member Garment/Tool Purchase Agreement" did not contain or

include any language that told the Indiana-based Menard, Inc. employees required to sign the

forms that 1) the agreement, form or "wage assignment" was "by its terms revocable at any time

by the employee upon written notice to the employer," and 2) was "agreed to in writing by the

employer."  See I.C. 22-2-6-2(a)(1)(C) & (D).

18.     Every wage deduction Menard, Inc. took from Edwards and all of his similarly

situated Indiana-based coworkers pursuant to the policies noted on the Menard, Inc. forms

containing the "Menard, Inc. Payroll Deduction Authorization" and "Menard, Inc. Equipment

and Tool Use Policy Acknowledgment" and the form titled "Team Member Garment/Tool

Purchase Agreement" was illegal and in violation of the Indiana Wage Payment Statute and the

Indiana Wage Assignment Statute for at least the two following reasons:

a.    the agreement, form or "wage assignment" did not contain the required language

that told the employee who signed the agreement that the wage assignment was

8

"by its terms revocable at any time by the employee upon written notice to the

employer;" and

b.      the agreement, form or "wage assignment" did not contain any language or

notation at all that indicated that the wage assignment was "agreed to in writing by

the employer."

See I.C. 22-2-6-2(a)(1)(C) & (D).  This means that every wage deduction taken by Menard, Inc.

from every Indiana-based employee was unlawful and a violation of the Indiana Wage Payment

Statute.  This is true of wage deductions which would arguably be permitted by the Indiana Wage

Assignment Statute if Menard, Inc. had proper wage assignments required by the law, such as

deductions for uniforms and equipment "necessary to fulfill the duties of employment" and

purchase of items or goods from Menard, Inc. for the employees' own benefit.  This is also true

of wage deductions taken by Menard, Inc. which would always be illegal, even if Menard, Inc.

had employees sign wage assignments meeting all of the requirements of I.C. 22-2-6-2(a)(1),

such as deductions to cover the costs of repairs or damages Menard, Inc. assessed to an Indiana-

based employee.  See also I.C. 22-2-8-1, which makes wage deductions taken to fine an

employee a Class C infraction.  Other deductions which would always be illegal include 1)

deductions taken for the cost of uniforms and equipment which were <u>not</u> necessary to fulfill the

duties of employment and 2) deductions taken for the cost of uniforms and equipment which, at

any time, exceeded the lesser of a) two thousand five hundred dollars ($2,500) per year; or b) five

percent (5%) of an employee's weekly disposable earnings [as defined in I.C. 24-4.5-5-

105(1)(a)].

19.      Edwards was an actual victim of Menard's unlawful wage deductions and illegal

kickbacks during his employment with Menard, Inc.  Edwards had sums deducted from his wages pursuant to the terms of a "Menard, Inc. Payroll Deduction Authorization" form he was required to sign.  Deductions were taken from Edwards' wages to cover costs of tools Menard, Inc. required Edwards to purchase over his years of employment to perform his work for Menard, Inc., including multiple tape measures, hammers, T-squares, chalk, and knives.

20.     Menard, Inc. intentionally and knowingly violated its employees' rights to earned wages through Menard, Inc.'s illegal wage assignment, kickback and wage deduction practices.

21.     Edwards and all similarly situated, Indiana-based Menard, Inc. coworkers have been harmed by Menard, Inc.'s published and systematic policies and practices of taking illegal wage deductions, all of which profited Menard, Inc. and worked to the detriment and harm of Menard, Inc.'s Indiana-based employees.  These illegal wage deductions are clearly the product of a conscious policy decision made by Menard, Inc. to pay its Indiana-based employees less than their full, earned wages.

22.     Menard, Inc.'s class-wide, illegal wage deductions constitute intentional, deliberate and bad faith violations of the Indiana Wage Payment Statute.

23.     In Edwards' case, as has been true in the cases of many current and former Indiana-based Menard, Inc. employees, Menard, Inc. has failed and refused to make a payment of all accrued wages on the date those wages became due, all in violation of the Indiana Wage Payment Statute.

24.     Important to his class action complaint, the Indiana Wage Payment Statute provides specific protections to wage earners which may not be waived or contracted away.

25.     As described above, Edwards believes and asserts that more than 5,000 putative

class members have been similarly subjected by Menard, Inc. to unlawful wage deductions and have claims under the Indiana Wage Payment Statute, but certainly the class consists of well over 100 members.  Edwards asserts that there is certainly more than Five Million Dollars ($5,000,000.00) in controversy in this action, particularly as the aggregate unpaid wages owed to the class based upon cumulative illegal wage deductions plus the liquidated damages under the Indiana Wage Payment Statute which are equal to an additional two times the aggregate, class-wide wage deductions total well in excess of Five Million Dollars ($5,000,000.00).  Finally, Edwards is a citizen of the State of Indiana.  Menard, Inc. is a citizen of the State of Wisconsin. Diversity jurisdiction exists for purposes of this Court's jurisdiction under the Class Action Fairness Act.  28 USC § 1332(d).

26.     In the same or similar way, Edwards and all similarly situated Menard, Inc. coworkers have been harmed by Menard, Inc.'s published and systematic policies and practices of taking unlawful kickbacks illegal wage deductions which violate the FLSA's "free and clear, no kickback rule", all of which profited Menard, Inc. and worked to the detriment and harm of Menard, Inc.'s employees.  These illegal kickbacks and wage deductions are clearly the product of a conscious policy decision made by Menard, Inc. to pay its employees less than their full, earned overtime wages.

27.     Menard, Inc.'s class-wide, illegal kickbacks and wage deductions constitute intentional, deliberate and bad faith violations of the FLSA and subject Menard, Inc. to the application of the FLSA's three year statute of limitations.

28.     As described above, important to this company-wide FLSA collective action, the FLSA provides specific protections to wage earners which may not be waived or contracted

away.

29.     By way of this Complaint, Edwards seeks for himself and for all other similarly situated Menard, Inc. employees, including all Indiana-based Menard, Inc. employees, and former employees all unpaid wages (illegally deducted wages), all unpaid overtime compensation, plus any and all liquidated damages under the FLSA and/or the Indiana Wage Payment Statute.  Additionally, Edwards seeks payment of his reasonable attorney's fees, costs and expenses.

### III.   CLASS ACTION ALLEGATIONS (For Indiana-Based Employees)

30.     Edwards incorporates herein by reference paragraphs 1 - 29 above.

31.     This Complaint is brought as a class action on behalf of other current and former Menard, Inc. Indiana-based employees who were similarly denied payment of wages under Menard, Inc.'s compensation scheme that involved unlawful wage deductions.

32.     With respect to Rule 23(b)(3) class action claims, Edwards will serve as class representative over the following class:

> Edwards will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute.  This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Edwards and on behalf of all eligible Menard, Inc. current and former Indiana-based employees who were damaged by Menard, Inc.'s compensation system which required and resulted in illegal wage deductions.  By virtue of the class action, Edwards represents the identical and/or similar interests of former and current Indiana-based coworkers who were denied wages under the same circumstance.

33.     The number of Menard, Inc.'s current and former Indiana-based employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Edwards will pursue discovery to obtain the names of the other current and former Menard, Inc. Indiana-based employees, to provide notice of the class action and to offer

the opt out opportunity.

34.     Particularly with the type of wage claim and practice at issue in this case, there are questions of law and fact that are common to the entire class.

35.     Edwards' claims are typical of the claims of the whole group of current and former Indiana-based employees harmed by Menard, Inc.'s illegal wage deductions.  Edwards' claims are typical of the claims of the whole class of current and former Menard, Inc. Indiana-based employees harmed by Menard, Inc.'s illegal wage practices.

36.     Edwards will act to fairly and adequately protect the interests of the entire class of current and former Menard, Inc. Indiana-based employees.

37.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Menard, Inc.  For example, to prove Menard, Inc.'s illegal wage practices, Edwards and other members of this class would seek in discovery records about all similarly situated current and former Menard, Inc. Indiana-based employees who were similarly subjected to illegal wage deductions.  Individual lawsuits by the members of the class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

38.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or

13

may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

39.     A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### IV.  COLLECTIVE ACTION ALLEGATIONS (For All Menard, Inc. Employees)

40.     Edwards incorporates herein by reference paragraphs 1 - 39 above.

41.     Edwards brings his claims in his capacity as an individual, and as a collective action on behalf of other current and former hourly paid employees who worked for Menard, Inc. at one or more of its retail locations, Midwest Manufacturing division locations and/or distribution centers throughout the country.  All said individuals were common victims of Menard, Inc.'s scheme to take illegal kickbacks and wage deductions which violate the FLSA and cause overtime violations.

42.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b) on behalf of Edwards and on behalf of all of Menard, Inc.'s employees who were damaged by Menard, Inc.'s scheme of illegal kickbacks and wage deductions which violate the FLSA.  By virtue of the "collective action," Edwards represents the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstance.  Edwards anticipates that other Menard, Inc. employees and former employees will opt in to this action.

43.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

44.     Edwards will act to fairly and adequately protect the interests of the entire collective group/class of current and former Menard, Inc. employees.

45.     A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

46.     A collective action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### *V.  JURISDICTION AND VENUE*

47.     This Court has jurisdiction over Edwards' FLSA claims under 28 USC § 1331, as those FLSA claims raise a question of federal law.  See 29 USC § 201 et seq.  The Court has supplemental jurisdiction over Edwards' individual and Rule 23 class action claims under the Indiana Wage Payment Statute, as those claims have a common basis in fact with Edwards' FLSA claims.

48.     Additionally, this Court has jurisdiction over this class action brought under the Indiana Wage Payment Statute by virtue of the Class Action Fairness Act.  28 USC § 1332(d). The class consists of far more than 100 class members.  There is greater than $5,000,000.00 in controversy.  Diversity jurisdiction exists because Edwards is a citizen of the State of Indiana and

Menard, Inc. is a citizen of the State of Wisconsin.

49.     This Court is the appropriate venue for this cause of action as Edwards, the

Indiana-based Rule 23 class members and some of the potential FLSA collective action opt-in

plaintiffs worked for Menard, Inc. in the State of Indiana.  More importantly, Edwards and many

of the class members worked for Menard, Inc. within counties in the Terre Haute Division of the

U.S. District Court for the Southern District of Indiana.

### VI.  STATEMENT OF CLAIMS

#### A.  Indiana Wage Payment Statute Claims

50.     Edwards incorporates herein by reference paragraphs 1 through 49 above.

51.     Edwards is the named Plaintiff whose Indiana statutory wage claim arises under

the Indiana Wage Payment Statute, I.C. 22-2-5, and the Plaintiff who represents the same or

similar interests of all current and former Menard, Inc. Indiana-based employees who voluntarily

resigned from employment.

52.     By way of this Claim, Edwards is seeking, individually and on behalf of members

of the Plaintiff Class of current and former Indiana-based Menard, Inc. employees, all available

damages, including all unpaid wages, all illegally deducted wages, all available liquidated (an

amount equal to two times the illegally deducted wages) damages, all attorney's fees, costs and

expenses, plus any other damage to which Edwards and his fellow Plaintiff Class members may

be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Edwards is seeking, individually and on

behalf of members of the Plaintiff Class, payment of unpaid wages, illegally deducted wages,

plus all available damages, including, but not limited to, double the amount of wages due as an

additional monetary damage, plus all attorney's fees, costs and expenses.

16

53.     Menard, Inc.'s failure to pay Edwards and all of his fellow class members their wages in full, particularly the wages it unlawfully deducted from pay checks, constitutes bad faith action.  Menard, Inc. can certainly not claim that it was acting in good faith when it intentionally instituted a scheme of illegal wage deductions which plainly violate the Indiana Wage Assignment Statute.  I.C. 22-2-6-2.

### B.  Fair Labor Standards Act Claims

54.     Edwards incorporates herein by reference paragraphs 1 through 53 above.

55.     Defendant Menard, Inc. is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA..  Menard, Inc. is an "employer," as that term is defined by the FLSA.  Menard, Inc. is a "person" as that term is defined by the FLSA.

56.     Menard, Inc. has violated Plaintiff's rights and the right of every similarly situated coworker to be properly paid full overtime wages in a manner required by the FLSA.

57.     Menard, Inc. has repeatedly violated the FLSA's overtime provisions by not paying Edwards and members of the Plaintiff Class at the required overtime compensation rate for all hours worked over 40 in a work week.

58.     Menard, Inc.'s failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Menard, Inc. to a three year statute of limitations.

59.     Edwards and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for

17

Menard, Inc.'s violations of their rights under the Fair Labor Standards Act.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Edwards respectfully requests that the Court enter judgment against Menard, Inc. and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1.  All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, payment of his attorney's fees, costs and expenses;

2.  All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

3.  All unpaid and illegally deducted wages;

4.  All reasonable attorney's fees and expenses;

5.  Costs;

6.  An injunction effective to prevent Menard, Inc. from continuing its unlawful wage practices which violate the Indiana Wage Payment Statute, including all policies/practices whereby Menard, Inc. takes illegal wage deductions and all policies/practices which result in Menard, Inc.'s failure to pay to its employees earned wages in full and on time;

7.  Prejudgment interest, if available; and

8.  Any and all other relief just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP


By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net


BARON & BUDD, P.C.

Allen R. Vaught
TX Bar No. 24004966
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
avaught@baronbudd.com

THE LAW OFFICE OF ROBERT J. HUNT, LLC

Robert J. Hunt
Attorney No. 30686-49
3091 E. 98th St. Ste. 280
Indianapolis, IN 46280
(317) 706-1100
Facsimile: (317) 623-8503
rob@indianawagelaw.com


NILGES DRAHER LLC

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
Michaela M. Calhoun (0093546)
7266 Portage St., N.W.
Suite D
Massillon, Ohio 44646

|  |  |
|---|---|
| Telephone: | 330-470-4428 |
| Fax: | 330-754-1430 |
| Email: | hans@ohlaborlaw.com |
|  | sdraher@ohlaborlaw.com |
|  | mcalhoun@ohlaborlaw.com |

### REQUEST FOR TRIAL BY JURY

Comes now the plaintiff, Kenneth R. Edwards, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net

### CERTIFICATE OF SERVICE

I certify that on November 14, 2017 a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Tami A. Earnhart
tami.earnhart@icemiller.com

Paul L. Bittner
paul.bittner@icemiller.com

James E. Davidson
james.davidson@icemiller.com

Michael A. Wukmer
michael.wukmer@icemiller.com

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP


By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.